IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>BARRY DEE BENNETT,<br>Defendant. | MEMORANDUM DECISION AND ORDER RELEASING DEFENDANT ON PRETRIAL CONDITIONS<br><br>Case No. 2:24-CR-205-TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendant's second Motion for Review of Detention by District Judge.[1] The Court conducted a hearing on the Motion on February 26, 2025. For the reasons described herein, the Court orders that Defendant be granted pretrial release, subject to the previously imposed conditions.

## I. BACKGROUND

Defendant is charged in a two-count Indictment for Possession of Methamphetamine with Intent to Distribute in violation of 21 U.S.C. §§ 841(a)(1) (Count I) and Felon in Possession of a Firearm and Ammunition in violation of 18 U.S.C. § 922(g)(1) (Count II). Following a detention order from the Magistrate Judge, Defendant filed his first motion for review of detention by district judge on July 8, 2024.[2] The Court held a hearing on the motion on July 16, 2024, at which the government represented that Defendant's recent admission to a drug treatment program had changed their position on detention, and they no longer opposed his release on

[1] Docket No. 53.

[2] Docket No. 19.

conditions. The Court agreed and ordered that Defendant be released on conditions, including participation in his drug treatment program, among others.[3]

On October 18, 2024, the probation officer filed a petition, which included three allegations that Defendant had violated the conditions of his pretrial release. The Magistrate Judge subsequently held a hearing on the petition. Defendant admitted to one of the allegations stating that he had consumed alcohol. The government did not seek detention, and the Magistrate Judge allowed him to remain on release with an added condition requiring alcohol testing.

On November 5, 2024, the probation officer filed another petition, which included the allegation that Defendant had violated the terms of his release by possessing ammunition. The Magistrate Judge held a hearing on November 22, 2024. At the hearing, Defendant represented that his home had many items in it, and that he and his daughters had tried to remove everything in the house that could violate his release conditions but he was not aware that the ammunition was on the property. The government agreed that it seemed like a genuine mistake and did not seek detention. The Magistrate Judge again allowed him to remain on release.

On December 19, 2024, the probation officer filed a petition, which included the allegation that Mr. Bennett had violated the terms of his release by possessing a revolver-style firearm, a rechargeable taser, and a single 9mm bullet. The firearm, which was disassembled and lacked sufficient parts to be operable if assembled, was found in a truck that was being warmed up to be driven off the property. The taser was found behind another item in the home. And the single bullet was found behind a false panel in the home. The Magistrate Judge held a hearing on February 19, 2025. Defendant admitted to all three of the allegations. The government requested detention based on the continued violations. The Magistrate Judge found it concerning that

[3] Docket No. 27.

Defendant had not alerted probation about the disassembled firearm until the probation officer indicated that the vehicle in which it was found would be searched. Ultimately, the Magistrate Judge ordered that Defendant be detained, finding that he was unlikely to abide by conditions of release. Defendant promptly filed this Motion for Review of Detention by District Judge. The Court held a hearing on the Motion on February 26, 2025.

At the February 26 hearing, Defendant described his property as a farm property with many items in and around the home and the various buildings located on the property. He further represented that the property now looks much different than it did when Defendant was first released, due to his efforts to clear the property of all problematic items. Defendant represented that he had enlisted the help of his two daughters to help him clear the property of problematic items in preparation for the probation officer's scheduled search, but that they had fallen short. However, he now believes that, after extensive efforts, the property is in order and cleared of any items that would violate the terms of his supervised release. Notably, there is no evidence before the Court that any of problematic items found on Defendant's property were obtained by Defendant after the conditions of his release were imposed.

Defendant also represented that, since he began treatment, he has been diagnosed with ADHD and has more recently began taking medications to treat ADHD, which helps him prioritize tasks. He further asserted that he is an asset to his community, that he has significant family and community support, that he has made meaningful efforts to participate in his drug treatment program and to do everything that is asked of him by his probation officer and the Court, that he has been candid with law enforcement and his probation officer, and that he is gainfully employed as a skilled handyman and jack of all trades. Finally, he acknowledged that it was a mistake not to alert the probation officer to the presence of the disassembled firearm

components in the truck, that he would not make such a mistake again, and that he will continue to make diligent efforts to comply with all conditions of release.

The government did not dispute the representations made by Defendant and noted that they felt he was making honest efforts to comply with his conditions, that he and his family had gone to great effort to clear his home of problematic items, and that they did not believe he was intentionally hiding or concealing any items from the probation officer. Ultimately, however, the government recommended detention based on the number of violations and a concern that there could still be problematic items on Defendant's property.

## II. STANDARD OF REVIEW

The Court considers Defendant's request for a review of the Magistrate Judge's order of detention under 18 U.S.C. § 3145(b) and DUCrimR 57-10. The Court conducts a de novo review of the detention issue giving no deference to the Magistrate Judge's findings or conclusions.[4] In so doing, the Court may elect to start from scratch and take evidence—whether or not new evidence is proffered—and also may incorporate the record of the proceedings conducted by the Magistrate Judge, including any exhibits.[5]

In making a detention determination, this Court is governed by the same standards as the Magistrate Judge. An accused is ordinarily entitled to pretrial release, with or without conditions, unless the Court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and community."[6] In

[4] DUCrimR 57-10(b) (providing for de novo review of detention orders); *United States v. Lutz*, 207 F. Supp. 2d 1247, 1251 (D. Kan. 2002); *see also United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003) (holding that district court's review under §3145(a) is de novo).

[5] *Lutz*, 207 F. Supp. 2d at 1251.

[6] 18 U.S.C. § 3142(b), (c), and (e).

certain cases, however, the presumption shifts. Here, detention was ordered pursuant to 18 U.S.C. § 3148, which governs sanctions for a defendant's violation of a release condition. Section 3148(b) provides that

> [t]he judicial officer shall enter an order of revocation of detention if, after a hearing, the judicial officer[:]
>
> (1) finds that there is . . . (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or (B) clear and convincing evidence that the person has violated any other condition of release; and
>
> (2) finds that . . . (A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or (B) the person is unlikely to abide by any condition or combination of conditions of release.

Section 3148(b) goes on to direct that "[i]f there is probable cause to believe that, while on release, the person committed a Federal, State, or local felony, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community." If the Court finds sufficient evidence to overcome the presumption, the Court "shall treat the person in accordance with the provisions of [S]ection 3142 of this title and may amend the conditions of release accordingly."[7]

> Once the presumption is invoked, the burden of production shifts to the defendant. However, the burden of persuasion regarding risk-of-flight and danger to the community always remains with the government. The defendant's burden of production is not heavy, but some evidence must be produced. Even if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court in determining whether to release or detain.[8]

As stated, the burden of persuasion remains with the government. The government must prove risk of flight or unlikelihood of abiding by conditions of release by a preponderance of the

---

[7] 18 U.S.C. § 3148(b)(2).

[8] *United States v. Stricklin*, 932 F.2d 1353, 1354–55 (10th Cir. 1991).

evidence and it must prove dangerousness to any other person or to the community by clear and convincing evidence.[9] As directed by Sections 3148 and 3142(g), to determine whether there are conditions of release that will reasonably assure the appearance of Defendant and the safety of any other person and the community, this Court considers the following factors:

> (1) The nature and circumstances of the offense charged . . .;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including—
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . . [10]

## III. DISCUSSION

Defendant has admitted to the allegations of petition, specifically that he possessed a disassembled firearm, a taser, and a single bullet, which is sufficient to amount to clear and convincing evidence that Defendant violated the terms of his supervised release. Further, it is a felony for a person who has been previously convicted of a felony to be in possession of a firearm or ammunition under both Utah and federal law.[11] The parties did not dispute that in this case the presumption in favor of detention shifts to Defendant. Defendant must therefore produce some evidence to rebut the presumption.

---

[9] *Cisneros*, 328 F.3d at 616; *United States v. Poinsett*, 953 F. Supp. 37, 38 (N.D.N.Y. 1997) ("[T]he United States must next establish by a preponderance of the evidence that the defendant is unlikely to abide by the conditions of his release in the future.").

[10] 18 U.S.C. § 3142(g).

[11] *See* 18 U.S.C. § 922(g); U.C.A. § 76-10-503.

The Court finds that Defendant has proffered sufficient facts to meet his burden of production. Since Defendant was granted pretrial supervision in July of 2024, he has been consistently and gainfully employed, actively engaged in his drug treatment program, maintained contact with his pretrial officer, and made meaningful efforts to comply with his pretrial release conditions. It is also undisputed that Defendant has not produced any positive drug tests, that he has significant community support, and that he is an asset to his community. Further, it is not disputed that Defendant has made significant efforts to clean his property up and to locate any contraband or items that would violate his release conditions. Finally, Defendant has represented that he is confident that the property is now cleared of problematic items, but accomplishing this took a significant amount of time.

The burden then remains with the government to prove risk of flight, dangerousness, or that Defendant is unlikely to abide by conditions of release. However, the presumption remains a factor. Considering the presumption and the § 3142(g) factors, the Court concludes that detention is not warranted.

First, the Court considers the nature and circumstances of the offense charged, including whether the offense involves a controlled substance. Defendant is charged with conduct related to selling methamphetamine out of his residence. Following a controlled methamphetamine purchase by law enforcement agents from Defendant, agents executed a search warrant on Defendant's residence. The search revealed roughly three pounds of suspected methamphetamine. Though tests revealed he possessed only two pounds, Defendant stated that he had been "ripped off" by his supplier on the third pound that did not test positive for methamphetamine. The government believes he had been selling methamphetamine out of his home for some time. The search also revealed six firearms and a substantial amount of

ammunition; however there does not appear to be any evidence that the firearms were possessed in connection with Defendant's alleged drug distribution activities. The government stated at the initial detention hearing that the firearms appeared to be hunting rifles and one of the firearms was not operable.

Additionally, since his release he has had multiple pretrial release violations. Aside from his first violation, which involved alcohol use, the subsequent violations are related to a failure to remove items from his home, the possession of which violates his pretrial release conditions. As stated, there is no evidence before the Court that Defendant obtained these items after conditions were imposed, and the government stated their belief that Defendant did not willfully hide these items from probation.

Second, the Court considers the weight of the evidence. The Indictment provides probable cause that Defendant committed the charged offense. Further, Defendant appears to have been cooperative with law enforcement and admitted that he was the sole occupant of the residence in which the illicit substances were found, and that anything in the house would have belonged to him. He also admitted to several of the supervised release allegations.

Third, the Court considers the history and characteristics of the person. Weighing in favor of detention, Defendant has a somewhat lengthy criminal history, much of which is drug related. In 2003/04, he engaged in a spree of criminal activity, which included two felony drug possession convictions. He then successfully completed parole following his incarceration for these crimes. However, after a lengthy period of apparent good behavior, in 2013/14 he engaged in another spree of criminal activity, which included another felony drug possession conviction in addition to a failure to stop at the command of a law enforcement officer while on probation. Defendant again successfully completed probation following a prison sentence for these charges.

Yet, again, he is now before the court a decade later for drug-related allegations. Defendant has a long history of drug addiction. At the time of arrest, Defendant candidly admitted to pretrial services that, following a lengthy period of sobriety, he relapsed and had been using methamphetamine daily to the time of his initial arrest. Further weighing in favor of detention are the number of supervision violations.

Weighing against detention, Defendant has been a willing and active participate in a drug treatment program. He has not produced any positive drug tests since his release. Defendant has strong community and family support. He has lived in Utah his entire life and has never left the country. He has two adult children with whom is very close. Defendant has a stable residence and stable employment. It appears he is a great asset to his employers, clients, and community. Finally, as noted, he has undergone significant efforts with the help of his family to clear his home of any items that would violate the conditions of his release.

Finally, the Court considers the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

Based on the Court's analysis of these considerations, the Court cannot find that Defendant poses a risk of flight or that he poses a danger to the safety of any other person or the community. Further, considering the undisputed assertions that Defendant has made continued and significant efforts to clear his home of any problematic items that would violate the terms of his conditions, that he has been active and successful in his treatment program, that he has remained gainfully employed throughout his release, that he has significant family and community support, and that he has maintained a stable residence, the Court does not find that that he is unlikely to abide by any condition or combination of conditions of release. The Court will therefore order Defendant to be released on the same conditions previously imposed.

IV. CONCLUSION

It is therefore

ORDERED that Defendant's Motion for Review of Detention (Docket No. 53) is GRANTED. Defendant is ordered released on the conditions previously imposed.

DATED this 27th day of February, 2025.

BY THE COURT:

Ted Stewart
United States District Judge